IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAVID J. CASSIDY, | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | No. 09-0028 |
| MICHAEL ASTRUE, | : | |
| Commissioner of Social Security, | : | |
| Defendant | : | |

## REPORT AND RECOMMENDATION

**LYNNE A. SITARSKI**
**UNITED STATES MAGISTRATE JUDGE** January 25, 2010

This action was brought pursuant to 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security ("Commissioner") denying the claims of David J. Cassidy ("Plaintiff") for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-405. Plaintiff has filed a request for review of the final decision of the Commissioner and Defendant has filed a response. For the reasons set forth below, I recommend that Plaintiff's request for review be granted; the final decision of the Commissioner be vacated; and this matter remanded for further proceedings consistent herewith.

### I. PLAINTIFF'S BACKGROUND

Plaintiff was born on September 21, 1962, and was 43 years old at the time of his administrative hearing. (R. 385). Plaintiff is a high school graduate and has taken course work equal to 8 credits at a community college. (R. 386). Plaintiff has never married and lives alone. (R. 54, 395 ). At his administrative hearing, Plaintiff testified that he has past relevant work as

general laborer in construction, mail room clerk, customer accounting representative, and quality control inspector. (R. 388, 390-391).[1]

## II. PROCEDURAL HISTORY

Plaintiff filed an application for DIB on November 24, 2004, alleging that he had been disabled since January 15, 1998, due to back pain, chest pain, chronic pulmonary obstruction disorder ("COPD"), hypertension, leg swelling, and mental impairments. (R. 20). Plaintiff's application was denied initially, and upon reconsideration. *Id.* Plaintiff requested an administrative hearing before an Administrative Law Judge ("A.L.J."), and a hearing was held on September 15, 2006, during which Plaintiff appeared and testified. (R. 380-407). Plaintiff's claim was denied by the A.L.J. on January 9, 2007. (R. 17-31). On February 1, 2008, the Appeals Council denied Plaintiff's request for review, making the A.L.J.'s decision the final decision of the Commissioner. (R. 10-12). Plaintiff then filed this action for judicial review of the final decision of the Commissioner.

## III. STANDARD OF REVIEW

Under the Social Security Act, a claimant is disabled if he or she is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental

---

[1] Plaintiff testified that he had taken 48 mg. of methadone on the morning of his administrative hearing. (R. 386). Plaintiff stated that he was on methadone in an effort to break an addiction to oxycodone. *Id.* Plaintiff asserted that he did not have any problems focusing or concentrating as a result of the methadone and that he was not suffering any side effects from this medication. *Id.*

2

impairment which can be expected to . . . last for a continuous period of not less than twelve (12) months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). Under the medical-vocational regulations, as promulgated by the Commissioner, a five-step sequential evaluation is to be used to evaluate disability claims.[2] In pressing his or her claim, the burden is solely upon the claimant to prove the existence of a disability. 42 U.S.C. § 423(d)(5). A claimant satisfies this burden by showing an inability to return to former work. Once a showing is made, the burden shifts to the Commissioner to show that the claimant, given his or her age, education, and work experience, has the ability to perform specific jobs that exist in the economy. *Rossi v. Califano*, 602 F.2d 55, 57 (3d. Cir. 1979).

The Commissioner has supplemented this sequential process for evaluating a claimant's eligibility for benefits with additional regulations dealing specifically with mental impairments. *Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999); *see also* 20 C.F.R. § 404.1520a. These

---

[2]These steps are as follows:

> First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. If he is not, then the Commissioner considers in the second step whether the claimant has a "severe impairment" that significantly limits his physical or mental ability to perform basic work activities. If the claimant suffers a severe impairment, the third inquiry is whether, based on the medical evidence, the impairment meets the criteria of the impairment listed in the "listing of impairments," . . ., which result in a presumption of disability, or whether the claimant retains the capacity for work. If the impairment does not meet the criteria for a listed impairment, then the Commissioner assesses in the fourth step whether, despite the severe impairment, the claimant has the residual functional capacity to perform his past work. If the claimant cannot perform his past work, then the final step is to determine whether there is other work in the national economy that the claimant can perform.

*Sykes v. Apfel*, 228 F.3d 259, 262-263 (3d Cir. 2000); *see also* 20 C.F.R. §§ 404.1520(b)-(f).

3

procedures require the A.L.J. to record the pertinent signs, symptoms, findings, functional limitations and effects of treatment contained in the record, in order to determine if a mental impairment exists. *Id.*; *see also* 20 C.F.R. § 404.1520a(b)(1). If an impairment is found, the A.L.J. must analyze whether certain medical findings relevant to a claimant's ability to work are present or absent. 20 C.F.R. § 404.1520a(b)(2). The A.L.J. must then rate the degree of functional loss resulting from the impairment in certain areas deemed essential for work. *Id.* If the mental impairment is considered "severe," the A.L.J. must then determine if it meets a listed mental disorder. 20 C.F.R. §§ 404.1520a(c)(2). If the impairment is severe, but does not reach the level of a listed disorder, then the A.L.J. must conduct a residual functional capacity assessment. 20 C.F.R. §§ 404.1520a(c)(3).

Judicial review of a final decision of the Commissioner is limited. The District Court is bound by the findings of the Commissioner if they are supported by substantial evidence and decided according to correct legal standards. *Allen v. Bowen*, 881 F.2d 37, 39 (3d. Cir. 1989); *Coria v. Heckler*, 750 F.2d 245, 247 (3d Cir. 1984). Substantial evidence is "more than a mere scintilla," and "such relevant evidence as a reasonable mind might accept as adequate." *Burnett v. Apfel*, 220 F.3d 112, 118 (3d Cir. 2000) (*citing Plummer*, 186 F.3d at 427). Even if the record could support a contrary conclusion, the decision of the A.L.J. will not be overruled as long as there is substantial evidence to support it. *Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986).

## IV. DISCUSSION

By decision dated January 17, 2007, the A.L.J. found in relevant part:

* * * *

> 2. Plaintiff did not engage in substantial gainful employment during the period of his alleged onset date of January 15, 1998, through his date last insured of September 30, 2005. 20 C.F.R. 404.1520(b); 404.1571.
>
> 3. Plaintiff has the following severe impairments: lumboscacral strain; disc herniation at L5-S1; status post right leg fracture with plate placement; hepatitis C; hypertension; COPD; and obesity. 20 C.F.R. 404.1520(c).
>
> 4. Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526).
>
> 5. Plaintiff has the residual functional capacity to perform the exertional demands of a range of light work that requires limited use of the lower extremities for pushing/pulling, no climbing of ladders, ropes, or scaffolds, no crawling, occasional climbing of ramps or stairs, and occasional balancing, stooping, kneeling, or crouching, and no concentrated exposure to temperature extremes and hazards such as moving machinery and heights.
>
> 6. Plaintiff is capable of performing his past relevant work as a mailroom clerk as such work is generally performed in the national economy and consistent with the Dictionary of Occupational Titles ("DOT") and was also able to perform his past relevant work as a clerk in a customer accounting department both as he actually performed the work and as it is generally performed in the national economy consistent with the DOT.
>
> 7. Plaintiff has not been under a "disability" as defined in the Social Security Act, at any time from January 15, 1998, through September 30, 2005, the date last insured (20 C.F.R. §§ 404.1520(f)).

(R. 22-31). Thus, the A.L.J. reached step 4 of the 5-step sequential evaluation and found that Plaintiff was not disabled. (R. 31).

Plaintiff contends that the evidence of record demonstrates that he is disabled, and that the A.L.J.'s decision is not supported by substantial evidence. Specifically, Plaintiff asserts that

5

the A.L.J.: (1) erred in his determination of Plaintiff's residual functional capacity ("R.F.C."); (2) erred in finding that Plaintiff's mental impairments were not severe; and (3) erred in finding that Plaintiff was capable of performing his past relevant work as a mailroom clerk.

### A. The ALJ Erred In His Assessment of Plaintiff's Residual Functional Capacity.

Plaintiff first claims that the A.L.J.'s R.F.C. determination is not supported by substantial evidence. Specifically, Plaintiff argues that (1) the ALJ "did not even consider [his] mental impairments" when making his R.F.C. assessment; and (2) failed to afford proper weight to the R.F.C. assessment provided by his treating physician William Ware M.D. Pl.'s Stat. of Issues at 8-9.

Residual functional capacity is defined as that which an individual is still able to do despite the limitations caused by his or her impairments. *Burnett*, 220 F.3d at 121 (*citing Hartanft v. Apfel*, 181 F.3d 358, 359 n.1 (3d Cir. 1999)). An individual's impairments include "medically determinable impairments, [that] may cause physical or mental limitations or restrictions that may affect his or her capacity to do work related physical or mental activities." S.S.R. 96-8p. In assessing R.F.C., the A.L.J. must consider the limitations and restrictions imposed by all of an individual's impairments, even those that are not "severe." *See* 20 C.F.R. § 404.1545(a)(2); *see also Burnett*, 220 F.3d at 122 (as part of the R.F.C. analysis, "the A.L.J. must consider the combined effects of multiple impairments, regardless of their severity"). Further, in making an R.F.C. assessment, the A.L.J. must consider "the nature and extent of a [plaintiff's] mental limitations and restrictions" before making a determination of plaintiff's "capacity for work activity on a regular and continuing basis." *See* 20 C.F.R. § 404.1545(c).

Lastly, an A.L.J. is required to consider and discuss all probative evidence detailing whether a plaintiff suffers from a mental impairment that could affect the ability to perform work related activities. *Johnson v. Comm. of Soc. Sec.*, 529 F3d 198, 203-205 (3d Cir. 2008); 20 C.F.R. § 404.1545.

Plaintiff first argues that the A.L.J. erred in his R.F.C. determination because "he did not even consider [his] mental health impairment." *See* Pl.'s Stat. of Issues at p. 8. Plaintiff further states that "even if [the A.L.J.] was correct that [Plaintiff's mental impairment] is not severe, it should be discussed under the rules." *Id.* I agree.

The evidence of record documents that Plaintiff's mental impairments have been assessed by four separate evaluators. Specifically, Plaintiff underwent a consultative mental evaluation conducted by Ralph Kaufman, M.D. (R. 357-61); a mental health evaluation conducted by Steven Segal, M.D. (R. 280-84); and a mental health evaluation conducted by state agency evaluator Thomas Fink, Ph.D. (R. 230-43). The treatment records of Plaintiff's primary care physician, William Ware M.D., also contain notations regarding Plaintiff's mental impairments. (R. 249-250).

Dr. Kaufman's evaluation notes indicate that upon examination, Plaintiff's appearance was disheveled, and his hygiene was fair. (R. 23, 357). No abnormal movements were noted, and Plaintiff's speech was determined to be clear with mild pressure. (R. 359). Dr. Kaufman noted that Plaintiff stated that he felt depressed; that his energy was sporadic; and that he was sleeping a lot in the daytime. (R. 23, 357). Plaintiff stated that he was taking Valium[3] and had

---

[3] Valium is indicated for the management of anxiety disorders. *Physicians Desk Reference* ("PDR"), 62 Ed. (2008) at 2765.

been taking Celexa,[4] but that Celexa was not helpful and had been discontinued. (R. 358-359). Dr. Kaufman opined that Plaintiff's affect was anxious and that his thought processes were circumstantial and sometimes irrelevant. (R. 359). Plaintiff denied suicidal or homicidal ideation but admitted to passive suicidal ideation and hallucinations. *Id.* Plaintiff was found to be alert and oriented in three spheres. (R. 360). Plaintiff's recent and long term memory was intact; he appropriately interpreted abstractions; but exhibited mild difficulty in performing serial sevens. *Id.* Finally, Dr. Kaufman diagnosed Plaintiff as suffering from general anxiety disorder and personality disorder. *Id.*

Dr. Segal examined Plaintiff on July 14, 2006, opining that Plaintiff had marked limitations regarding his activities of daily living; slight difficulties in maintaining social functioning; constant deficiencies in concentration, persistence, and pace; and continual episodes of deterioration or decompensation. (R. 23, 284). Dr. Segal noted that Plaintiff suffered from general anxiety disorder and obsessional thinking. (R. 282). Dr. Segal assessed Plaintiff a Global Assesssment of Functioning ("GAF") score of 58,[5] and opined that Plaintiff's mental impairments were likely to cause him to be absent from work more than three times per month. (R. 23, 283).

Plaintiff was also examined by state agency examiner Thomas Fink, Ph.D. Dr. Fink opined that Plaintiff had no medically determinable mental impairments. (R. 230-243). I note,

---

[4] Celexa is indicated for the treatment of depression. *PDR*, 62 Ed. (2008), at 1162

[5] A GAF score is based upon a consideration of the psychological, social, and occupational functioning of an individual on a hypothetical continuum of mental health or illness. *See Diagnostic and Statistical Manual of Mental Disorders,* 4th Ed. Text Revision (2000) ("DSM IV-TR") at 30-32. A GAF score of 58 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning. *Id.* at 34.

however, that Dr. Fink's assessment is devoid of any analysis or discussion of Plaintiff's complaints regarding his mental impairments. The form utilized by Dr. Fink consists of 14 pages related to the evaluation of a claimant's allegations of mental impairments. *Id.* Dr. Fink simply checked the first box on the first page of the form indicating "no medically determinable impairments." (R. 230). Dr. Fink failed note in even the most rudimentary fashion how he arrived at his conclusion, and failed to even express an opinion regarding Plaintiff's functional limitations.[6] Consequently, this evaluation is of little value to the Court.

The evidence of record also indicates that Plaintiff made complaints regarding his mental impairments to his primary care physician, Dr. William Ware. Dr. Ware's treatment notes indicate that on June 23, 2005, Plaintiff informed him that he had gone to Chester County Hospital three days earlier suffering from rapid heart beat. (R. 250). Plaintiff related that while he was at the hospital, he was diagnosed with anxiety and depression, and that he had made an appointment with Dr. Ware to follow up on this diagnosis. *Id.* As a result of Plaintiff's complaints, Dr. Ware prescribed Zoloft[7]. *Id.* On July 25, 2005, Plaintiff again complained of anxiety and depression, noting that he had been under a lot of stress. (R. 249). Dr. Ware indicated that Plaintiff was taking both Zoloft and Valium. *Id.*

Lastly, Plaintiff presented testimony regarding his mental impairments at his administrative hearing. Plaintiff noted that he was taking Valium twice a day, and when he

---

[6] The possible choices regarding a claimant's functional limitations range from none to extreme. Presumably, if Dr. Fink found that Plaintiff had no medically determinable impairments, he should have, at the very least, checked the appropriate boxes indicating no functional limitations.

[7] Zoloft is indicated for the treatment of major depressive disorder in adults. *PDR*, 62 Ed. (2008) at 2578.

attempted to reduce his dosage it "felt like his heart was going to explode out of [his] chest." (R. 386). Plaintiff further testified that he was having trouble sleeping; that he was experiencing periods of time during the day in which he would unexpectedly fall asleep; and unexplained weight gain. (R. 397, 400).

As noted above, in making an R.F.C. assessment, the A.L.J. is required to consider all of Plaintiff's impairments, even those found to be not severe. Moreover, the Third Circuit has long held that when making an R.F.C. assessment, the A.L.J. "must give some indication of the evidence which he rejects and his reason(s) for discounting such evidence." *Burnett v. Commissioner of Social Sec. Admin.*, 220 F.3d 112, 121 (3d Cir. 2000) (*citing Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981); *Plumer v. Apfel*, 186 f.3d 422, 429 (3d Cir. 1981)). An A.L.J. is required to provide such reasoning so that the reviewing district court can determine whether this evidence was not credited or simply ignored when the A.L.J. made his R.F.C. assessment. *Cotter v. Harris*, 642 F.2d at 705.

Here, the A.L.J. conducted a thorough and comprehensive discussion of Plaintiff's mental impairments at Step 2, but failed to consider Plaintiff's mental impairments when making his R.F.C. assessment at Step 4, as required under the regulations. The above-noted evidence regarding Plaintiff's mental impairments can not be ignored simply because the A.L.J. determined at Step 2 that Plaintiff's mental impairments were not severe. Consequently, in failing to consider and discuss this evidence at Step 4, the A.L.J. has precluded this Court from determining whether this evidence was not credited or simply ignored when the A.L.J. made his R.F.C. assessment. *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981)*; Burnett v. Commissioner of Social Sec. Admin.*, 220 F.3d 112, 121 (3d Cir. 2000) (the ALJ "must give

some indication of the evidence which he rejects and his reason(s) for discounting such evidence."). Because the A.L.J. failed to provide his reasoning for failing to consider and discuss Plaintiff's mental impairments in making his R.F.C. assessment, I conclude that this portion of the A.L.J.'s decision is not supported by substantial evidence.

Next, Plaintiff argues that the A.L.J. erred in failing to accord proper weight to the R.F.C. assessment provided by treating physician Dr. Ware. In making an R.F.C. determination, a treating physician's report is to be given special significance. *See Morales v. Apfel*, 225 F.3d 310 (3d Cir. 2000); *see also* S.S.R. 96-2p, "Policy Interpretation Ruling: Giving Controlling Weight to Treating Source Medical Opinions." "A cardinal principle guiding disability eligibility determinations is that the A.L.J. accord treating physicians' reports great weight, especially 'when their opinions reflect expert judgment based on continuing observation of the patient's condition over a prolonged period of time.'" *Id.* at 316 (*quoting Rocco v. Heckler*, 826 F.2d 1348, 1350 (3d Cir. 1987)). However, the determination of a claimant's R.F.C. is an issue reserved solely to the Commissioner. 20 C.F.R. § 404.1527(e). A treating source's opinion regarding a claimant's R.F.C. will be considered but is not entitled to "any special significance." 20 C.F.R. § 404.1527(e)(3).

Here, the A.L.J rejected the April 2005, opinion of Plaintiff's treating physician, Dr. Ware, which stated that Plaintiff was not capable of working on a sustained, full time basis due to an inability to stand or walk for more than 2 hours per 8 hour workday or 20 minutes without interruption; sit for more than 4 hours; work for more than 2 hours without the need to lie down; and the anticipation that Plaintiff would be absent for work more than 3 times per month. (R. 244-248).

In rejecting Dr. Ware's assessment, the A.L.J. found that Dr. Ware's opinion "was not supported by [the] evidentiary record including [Dr. Ware's] own treatment records." (R. 30). Specifically, the A.L.J noted that Dr. Ware's treatment notes did not contain diagnostic studies or examinations to support his conclusion that Plaintiff was unable to work on a regular and continuing basis. *Id.* Consequently, the A.L.J. declined to accord significant weight to Dr. Ware's R.F.C. determination. *Id.*

Plaintiff argues that, contrary to the A.L.J's determination that Dr. Ware's R.F.C. assessment was not supported by the evidence of record, there are "several reports" and extensive notes supporting Dr. Ware's opinion. Pl.'s Stat. of Issues at 9. Plaintiff states that there are "several reports of positive straight leg raising tests and other objective signs such as other findings related to limited motion in the back, legs, and hips and findings of spasms, tenderness, and palpitations." *Id.* Plaintiff also states that "Dr. Ware's office notes were extensive, showed a lot of treatment for back issues and other complaints."

Dr. Ware's treatment notes indicate that on September 11, 1998, Plaintiff had tenderness of the paralumbar muscles and the parathoracic muscles with some tenderness over the vertebrae. (R. 185). Deep tendon reflexes were intact bilaterally, and there was no evidence on straight leg raising. *Id.* Dr. Ware noted that Plaintiff's injury was "likely a sprain/strain" caused by an automobile accident that had occurred on November 26, 1996. *Id.*

On December 7, 1998, Dr. Ware wrote a letter to a claims adjuster in reference to a workmen's compensation claim submitted by Plaintiff. (R. 188-189). In this letter, Dr. Ware states that Plaintiff suffers from a "lumbar strain with an intervertebral disc herniation at the L5-S1 level." (R. 187). Dr. Ware notes that Plaintiff is not a candidate for surgery, but he would

12

benefit from physical therapy. *Id.* Finally, Dr. Ware opines that it would be "reasonable for [Plaintiff] to attempt [to work] on a light duty basis with restrictions," but "it is likely that [Plaintiff] will suffer with back pain into the future." *Id.*

On October 30, 1998, Plaintiff underwent an MRI of the lumbosacral spine. (R. 189). The MRI revealed "minimal intervertebral disc herniation . . at L5/S1" and "mild focal impingement upon the thecal sac." *Id.* The remainder of the intervertebral discs were found to be normal; no spinal stenosis was seen; and no significant degenerative disease or osteoarthritis was present. *Id.* No other abnormalities were noted within the spinal canal. *Id.*

Dr. Ware's progress notes reflect that Plaintiff continued to complain of back pain over the next several years. However, other than prescriptions for pain medication and physical therapy, Plaintiff received no further treatment, and no further diagnostic tests were performed or recommended by Dr. Ware. (R. 251-278).

I agree with the A.L.J's finding that the evidence of record does not support Dr. Ware's R.F.C. evaluation opining that Plaintiff's impairments "rendered him unable to work on a regular and continuing basis." (R. 30, 244-248). The A.L.J. properly considered Dr. Ware's R.F.C. assessment and properly found that based upon the evidence of record Plaintiff suffered from a severe, but not disabling, back impairment.

Finally, Plaintiff argues that the A.L.J.'s failure to give proper weight to Dr. Ware's R.F.C. assessment can not stand based upon the "treating physician rule" and the length of the treatment relationship between Plaintiff and Dr. Ware. However, the admonition that an A.L.J. accord great weight to a treating physician's report when it is based upon expert judgment and a continuing observation of a patient's condition does not apply to an R.F.C. assessment. *Rocco v.*

*Heckler*, 826 F.2d 1348, 1350 (3d Cir. 1987). As stated above, the issue of a Plaintiff's R.F.C. is reserved solely to the Commissioner, and a treating source's R.F.C. determination is not entitled "to any special significance." 20 C.F.R. § 404.1527(e)(3). Consequently, I conclude that this portion of the A.L.J.'s decision is supported by substantial evidence.

### B. The ALJ Erred in Finding That Plaintiff's Mental Impairments Were Not Severe.

Plaintiff next argues that the A.L.J. erred at Step 2 in concluding that Plaintiff's mental impairments were not "severe" impairments. In support thereof, Plaintiff states that the record "fairly indicates" that he suffers from anxiety disorder, personality disorder, compulsions, circuitous and irrelevant thought, and sleep problems. *See* Pl.'s Stat. of Issues at p. 10. Plaintiff asserts that these conditions "would logically have more than a minimal impact on mental abilities (sic) to do basic work activities," and thus constitute a severe impairment. *Id.*

Step 2 is known as the "severity regulation," and focuses on whether the claimant is suffering from a severe impairment. 20 C.F.R. § 404.1520(c). An impairment is severe if it is "of magnitude sufficient to limit significantly the individual's ability to do basic work activities." *Santise v. Schweiker*, 676 F.2d 925, 927 (3d Cir. 1982); *see also* 20 C.F.R. § 404.1521(a); Social Security Ruling 96-3p, "Considering Allegations of Pain and Other Symptoms in Determining Whether a Medically Determinable Impairment is Severe." Basic work activities are defined in the regulations as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b). A non-severe impairment is a "slight abnormality" which had a minimal effect on the individual such that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience. *Bowen v. Yuckert*, 482 U.S. 137, 149-151

14

(1987); *Newell v. Commissioner of Social Security*, 347 F.3d 541, 546-547 (3d Cir. 2003). The burden to show a medically determinable impairment is on the plaintiff. *Id.* at 146. An A.L.J.'s severity inquiry at Step 2 is a "de minimis screening device to dispose of groundless claims" expeditiously and without the need for further evaluation under the commissioner's 5 step sequential evaluation. *Newell*, 347 F3d at 547.

As a preliminary matter, I note that the A.L.J. conducted a thorough and comprehensive discussion of Plaintiff's mental impairments at Step 2. In addition to reviewing the post hearing consultative evaluation conducted by Dr. Kaufman. (R. 357-61), the A.L.J. considered evaluations conducted by Plaintiff's treating physician Dr. Ware (R. 249-250), Dr. Segal (R. 280-84), and state agency evaluator Dr. Fink. (R. 230-43).

In concluding that Plaintiff's mental impairments were "non-severe," the A.L.J. noted that the evidence of record indicated that Plaintiff's mental impairments had no more than a minimal effect on his ability to perform basic work activities and imposed no significant vocationally relevant limitations. (R. 24). In support of this conclusion, the A.L.J. noted that Plaintiff had "no psychiatric hospitalizations" and no episodes of decompensation during the relevant time period. *Id.* The A.L.J. further concluded that evidence of Plaintiff's activities of daily living justified a finding that Plaintiff's mental impairments were not severe. The A.L.J. noted that Plaintiff lives alone and does not require a "highly supportive living arrangement in order to function;" that he leaves his home unaccompanied; cares for pets; performs "home care tasks;" and can understand and follow directions. *Id.* The A.L.J. further noted that Plaintiff did not have problems communicating; can deal with criticism and change; and "can get along with people." *Id.*

The A.L.J. also gave little weight to Dr. Segal's July 2006, mental health evaluation in which Dr. Segal found that Plaintiff had marked limitations regarding activities of daily living; constant limitations regarding concentration, persistence, and pace; and continual episodes of deterioration and decompensation. (R. 23). The A.L.J. noted that Dr. Segal's opinion was not entitled to significant weight because he had only seen Plaintiff on one occasion and his GAF assessment of "58 indicated a far greater level of functioning than indicated by his opinion." *Id.* Thus, the A.L.J. determined that Dr. Segal's opinion contained inconsistencies and was not supported by the evidence of record. *Id*; *Colon v. Barnhart*, 424 F.Supp 2d 805, 812 (E.D.Pa. 2006) (Baylson, J.) (an A.L.J. is required to determine whether a GAF score is consistent with the findings and provide reasons for finding an inconsistency).

I conclude that the A.L.J. thoroughly and comprehensively discussed the evidence of record and explained his reasons for finding that Plaintiff's mental impairments were not severe. Plaintiff argues that the A.L.J.'s finding that his mental impairments were not severe at Step 2 "tainted [the] entire decision," but I do not find this to be the case, particularly as it relates to the A.L.J.'s analysis at Step 2. As stated above, a dismissal at Step 2 serves to dispose of groundless claims without need for further evaluation. Here, Plaintiff's claim proceeded to Step 4. Thus, the A.L.J.'s finding that Plaintiff's mental impairments were not severe at Step 2 was not dispositive. Moreover, although the A.L.J found that Plaintiff's mental impairments were not severe at Step 2, he specifically discussed Plaintiff's mental impairment at Step 3, finding that Plaintiff did not meet Listing 12.00 concerning mental disorders. (R. 24). Consequently, I conclude that the A.L.J.'s finding at Step 2 did not "taint the entire decision" and that this portion of the A.L.J.'s decision is supported by substantial evidence.

### C. The ALJ Erred In Finding That Plaintiff Was Capable of Performing His Past Relevant Work As A Mail Room Clerk.

Finally, Plaintiff argues that the A.L.J. erred in finding that he was capable of performing his past relevant work as a mail room clerk. Specifically, Plaintiff asserts that as the A.L.J. determined that he was only capable of performing work at the light exertion level, it was error to find that he was capable of performing his past relevant work as a mail room clerk, which he testified was performed at the medium exertion level.

As an initial matter, I note that the A.L.J. did not find that Plaintiff was capable of performing his past relevant work as a mail room clerk *as he performed it,* but rather as the position of mail room clerk is performed in the national economy, and as described in the Dictionary of Occupational Titles ("DOT"). (R. 30). Under Social Security Ruling 82-61, an A.L.J. may apply any 1 of 3 possible tests in determining whether a plaintiff is capable of performing past relevant work. SSR 82-61 states that the 3 possible tests to be utilized include: (1) whether the claimant retains the capacity to perform a past relevant job based on a broad generic, occupational classification of that job, e.g., "delivery job," "packaging job," etc; (2) whether the claimant retains the capacity to perform the particular functional demands and job duties peculiar to an individual job as he or she actually performed it; and (3) whether the claimant retains the capacity to perform the functional demands and job duties of the job as ordinarily required by employers throughout the national economy. SSR 82-61; 1982 WL 31387 at *1-2. Significantly, SSR 82-61 also states that "[a] former job performed by the claimant may have involved functional demands and job duties significantly in excess of those generally required for the job by other employers throughout the national economy. Under this test, if the

17

claimant cannot perform the excessive functional demands and/or job duties actually required in the former job but can perform the functional demands and job duties as generally required by employers throughout the economy, the claimant should be found to be "not disabled." *Id.*

To determine "the functional demands and job duties of the job as ordinarily required by employers throughout the national economy," an A.L.J. may rely on the DOT. *Malloy v. Commissioner of Social Security*, 306 Fed.Appx. 761 (3d Cir. 2009); *Garibay v. Commissioner Of Social Sec.*, 336 Fed.Appx. 152 (3d Cir. 2009). The DOT classifies the job of mail room clerk as "light work," defined as requiring the ability to exert "up to 20 pounds of force occasionally, and/or up to 10 pounds of force frequently, and/or a negligible amount of force constantly." *See* DOT Appendix "C", Part IV. PHYSICAL DEMANDS - STRENGTH RATING (Light) (209.687-026) (Mail Clerk).

The DOT description of the work of mail room clerk falls within the regulatory definition of light work. To the extent that an R.F.C. determination was properly made, Plaintiff would be capable of performing this past relevant work. However, this finding necessarily turns on the propriety of the A.L.J.'s R.F.C. assessment. As I have determined that the A.L.J.'s R.F.C. assessment in this matter is not supported by substantial evidence for failure to consider Plaintiff's mental impairments, the A.L.J.'s assessment of whether Plaintiff is capable of performing his past relevant work will have to be re-evaluated based upon a proper R.F.C. assessment considering all of Plaintiff's impairments.[8] *See* 20 C.F.R. § 1545(5)(i) ("We will first

---

[8] The Commissioner points out that even if this Court were to find that Plaintiff was unable to perform his past relevant work as a mail room clerk, Plaintiff does not dispute the A.L.J.'s determination that he was capable of performing his past relevant work as a customer accounting clerk. The DOT classifies the job of accounting clerk as sedentary, which is below the light exertion level of mail room clerk. *See* DOT 216.482-010 (accounting clerk). However,

use our residual functional capacity assessment at step four of the sequential evaluation process to decide if you can do your past relevant work").

As I have recommended that this matter be remanded for reconsideration of Plaintiff's R.F.C. based upon an evaluation and analysis of Plaintiff's mental impairments and their effect on his ability to work, I also recommend that the A.L.J. reconsider his determination at Step 4, based upon this reconsideration.

Therefore, I make the following:

---

because I am recommending that this matter be remanded for a proper assessment of Plaintiff's R.F.C. and the application of that R.F.C. to Plaintiff's ability to perform past relevant work, it is unnecessary to address this claim further.

# **R E C O M M E N D A T I O N**

AND NOW, this __25TH__ day of January 2010, it is RESPECTFULLY RECOMMENDED that Plaintiff's request for review be GRANTED IN PART; the final decision of the Commissioner be VACATED; and this matter REMANDED for further proceedings consistent herewith.

                              **BY THE COURT:**

                               /s/ Lynne A. Sitarski
                              **LYNNE A. SITARSKI**
                              **UNITED STATES MAGISTRATE JUDGE**